IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRYL D. EVANS,

      Plaintiff,

v.

ATLANTA PUBLIC SCHOOLS,

      Defendant.

CIVIL ACTION FILE NO.

1:15-cv-3652-TWT-CMS

## **FINAL REPORT AND RECOMMENDATION**

This employment discrimination matter is before the Court on Defendant Atlanta Public Schools' ("APS") Pre-Answer Motion to Dismiss, which was filed on June 10, 2016. (Doc. 28). Plaintiff Darryl D. Evans, who is proceeding in this civil action without counsel, did not filed a response in opposition to APS's Motion and the time to do so has long passed.[1] Accordingly, APS's Motion to Dismiss is deemed unopposed. See L.R. 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). However, an unopposed

---

[1] Plaintiff was granted an extension of time, through August 17, 2016, to respond to APS's Motion to Dismiss. (Doc. 30). The extension was based on Plaintiff's statement that he was not receiving copies of APS's filings, and the incorrect statement on APS's certificate of service indicating that the Court's CM/ECF system would serve Plaintiff, who is pro se. APS was ordered to send Plaintiff, by U.S. mail, a copy of every document it had filed in this civil action. On July 26, 2016, APS filed a Notice of Compliance with the Court's Order. (Doc. 31).

motion does not mean that the moving party automatically prevails; rather, the Court is still to consider the merits of the motion.  See Simpson v. Countrywide Home Loans, Case No. 1:10-CV-0224-CAM-ECS, 2010 WL 3190693, at *3 (N.D.Ga. Apr. 26, 2010) (holding that "unopposed" under Northern District of Georgia Local Rule 7.1(B) does not mean the non-responsive party "abandoned" its claims in the motion to dismiss context), report and recommendation adopted, 1:10-CV-0224-JOF, 2010 WL 3190686 (N.D.Ga. Aug. 11, 2010).  Therefore, I have considered the merits of APS's Motion to Dismiss.  For the reasons stated below, I **RECOMMEND** that APS's Motion to Dismiss (Doc. 28) be **GRANTED**.

## I.   THE ALLEGATIONS IN THE COMPLAINT[2]

Plaintiff is an African-American male.  (Doc. 1, Complaint ("Compl.") ¶ 13).  Plaintiff asserts that between August 2014 and May 2015, while he was employed by APS at Inman Middle School, he was subject to discrimination based on his race and gender, and subject to retaliation for opposing APS's unlawful employment practices.

---

[2]  These facts are taken from the Complaint, the attached "Timeline of Events," and other exhibits to the Complaint, and are accepted as true and construed in the light most favorable to the Plaintiff for the purpose of evaluating APS's motion to dismiss under Rule 12(b)(6).  See Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).

Attached to Plaintiff's Complaint is a timeline of events that Plaintiff contends supports his claims.  Plaintiff alleges that on August 1, 2014, Principal Elizabeth Bockman said,"I own you people!" to the Inman Middle School faculty and staff, and that many African-American faculty and staff members found the comment to be racially offensive.  (Doc. 4 at 10).  Plaintiff alleges that complaints were made through APS's ethics hotline, but that no investigation took place. (Id.).  Plaintiff alleges that on September 22, 2014, Principal Bockman made false allegations about Plaintiff that resulted in "a write-up."  (Id.).  Plaintiff alleges that on that same day, Principal Bockman asked Plaintiff: "Do you see yourself as being too urban to be at Inman?"  (Id.).

Plaintiff alleges that in October 2014, while having lunch with two people identified as Mr. Marquez and Coach Avery, Greg Middleton, the Associate Superintendent of Middle Schools, came into the room they were eating in.  (Doc. 4 at 10).  The three expressed "our concerns about troublesome matters that were affecting and dividing the staff at Inman" to Associate Superintendent Middleton. (Id.).  Thereafter, Coach Avery was moved to another lunch wave.  Plaintiff alleges that later that month, he received a false "write-up."  (Id.).

On December 3, 2014, Plaintiff was placed on a Professional Development Plan ("PDP").  (Doc. 4 at 11).  Although Principal Bockman was listed as the PDP

administrator and supervisor, she did not attend the scheduled progress meetings. (Id.).  On February 10, 2015, Plaintiff received a letter stating that his contract with APS may not be renewed.  (Doc. 4 at 11).  On February 11, 2015, Principal Bockman discussed the letter with Plaintiff and stated that Plaintiff would not receive a teaching contract for the next school year.  (Id. at 12).

On February 17, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") stating that he was discriminated against because of his race and sex, and in retaliation for opposing APS's unlawful employment practices, citing to Principal Bockman's August 1 and September 22 comments, his placement on a PDP, and the letter stating that that his contract with APS may not be renewed.  (Doc. 4 at 16).

Thereafter, Plaintiff alleged that he completed all of the requirements listed on the PDP, but the PDP was extended through April 3, 2015.  (Doc. 4 at 12).  On April 24, 2015, Plaintiff sent a letter to the Office of Performance Management inquiring about the PDP process and expressing his opinion that it was applied incorrectly in his case.  (Id.).  On May 8, 2015, Principal Bockman gave Plaintiff a letter from the Office of the APS Superintendent stating that Plaintiff's contract with APS would not be renewed.  (Doc. 4 at 13).

4

Plaintiff filed a second charge of discrimination with the EEOC on June 17, 2016.  (Doc. 4 at 17).  In it, Plaintiff asserted that he had been discriminated against because of his race and sex, and in retaliation for opposing APS's unlawful employment practices, and that he was subjected to a hostile work environment.

In the Complaint, Plaintiff seeks injunctive relief, specifically, to be reinstated in his position and have a number of individuals removed from their positions at APS, as well as monetary damages.[3]

## II.    APS'S MOTION TO DISMISS (DOC. 28)

In its Motion to Dismiss, APS argues that the Complaint should be dismissed on the grounds that it is frivolous and fails to state a plausible claim for relief.  (Doc. 28).  Specifically, APS argues that the comments by Principal Bockman were not racially discriminatory or threatening, and that there are no allegations that they affected Plaintiff's job performance.  (Doc. 28-1 at 9).  APS argues that Plaintiff does not identify any action by APS related to his gender, fails to identify an adverse employment action, and fails to allege facts to support a plausible inference that there was a causal connection between the EEOC charge of discrimination and the nonrenewal of Plaintiff's contract with APS.  (Id. at 9-10,

---

[3] Plaintiff sought, and was granted, leave to amend the amount of money damages requested in his Complaint.  (Docs. 14, 30).

14-16).  APS also argues that Plaintiff failed to exhaust his administrative remedies with regard to Principal Bockman's August 1, 2014 comment because Plaintiff filed a charge of discrimination with the EEOC more than 180 days after the comment was made.  (Id. at 16-18).

As previously noted, Plaintiff has not filed a response in opposition to APS's Motion.   Nor has Plaintiff sought to amend his Complaint to address the deficiencies identified by APS in its Motion.

**A.** **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted); Resnick v. AvMed, Inc., 693 F.3d 1317, 1325 (11th Cir. 2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the

complaint are "enough to raise a right to relief above the speculative level;" "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. All well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Ellis v. Cartoon Network, Inc., 803 F.3d 1251, 1255 (11th Cir. 2015). The court, however, need not accept as true a plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S. at 678.

The allegations contained in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, and are construed liberally. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). A pro se complaint, however, is still required to conform to procedural rules. McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993). In addition, the leniency afforded to pro se complaints does not give courts license to serve as de facto counsel or permit them to rewrite an otherwise deficient pleading. Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), a complaint, whether filed with or without counsel, must contain enough factual content, if accepted as true, to state a claim for relief that is plausible on its face. Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir.

2014); <u>Jones v. Brown</u>, No. 16-10159, 2016 WL 2848691, at *1 (11th Cir. May 16, 2016) (unpublished).

**B.**      **Discussion**

Applying these standards, I recommend that APS's Motion to Dismiss be granted.

1.      <u>Title VII Discrimination</u>

Under Title VII, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race or gender.  42 U.S.C. § 2000e-2(a)(1).  There are two types of actionable discrimination under Title VII: disparate treatment and disparate impact.  <u>Spivey v. Beverly Enters., Inc.</u>, 196 F.3d 1309, 1312 (11th Cir. 1999).  To prevail on a disparate treatment claim, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against him on the basis of a protected characteristic.  <u>See</u> <u>Ricci v. DeStefano</u>, 557 U.S. 557, 577 (2009).  A disparate impact claim targets an employment practice that has an actual, not necessarily deliberate, adverse impact on protected groups.  <u>Id.</u>

Here, Plaintiff appears to seek to bring claims for disparate treatment based on his race and gender.  Disparate treatment can take the form either of a "tangible

8

employment action," such as a firing or demotion, or of a "hostile work environment" that changes "the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned." Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004). Here, it is unclear which theory Plaintiff seeks to utilize.

With regard to his claim for race discrimination, Plaintiff alleges that Principal Bockman made two racially offensive statements. Plaintiff alleges that on August 1, 2014, Principal Bockman made a comment to the faculty and staff – "I own you people!" – that many African-American faculty and staff members found to be racially offensive, and that on September 22, 2014, Principal Bockman asked Plaintiff, "Do you see yourself as being too urban to be at Inman?" (Doc. 4 at 10). Even assuming these facts to be true, they are insufficient to state a plausible claim for relief because there are no factual allegations that connect Principal Bockman's comments to the decision to place him on a PDP and/or to not renew his contract. To state a plausible claim based on a disparate-treatment theory, a complaint must contain enough factual matter, taken as true, to suggest, either directly or circumstantially, that the employer's actions were based on the employee's protected classification. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008); Pouyeh v. UAB Dep't of Opthalmology, 625 F.

9

App'x 495, 497 (11th Cir. 2015) (unpublished).  Here, Plaintiff failed to allege fact to suggest, either directly or circumstantially, that APS's decisions were based on his race.  Plaintiff's allegations that he was subject to disparate treatment based on his race are wholly conclusory and unsupported.  Because the Complaint fails to set forth enough factual content to allow the Court to draw the reasonable inference that APS is liable for the intentional racial discrimination alleged, Plaintiff has failed to state a claim for relief.

As for Plaintiff's allegations of disparate treatment based on his gender, this claim also fails.  The only allegation in the Complaint regarding Plaintiff's gender is his identity as an African American male.  (Compl. ¶ 13, see Doc. 4 at 10). There are no allegations that Plaintiff was treated differently than similarly situated employees because of his gender, or to suggest any intentional discrimination based on Plaintiff's gender.  See Davis, 516 F.3d at 974-75.  The mere fact that Plaintiff is male and Principal Bockman is female is not "enough to raise a right to relief about the speculative level" and state a plausible claim for discrimination based on gender.  Twombly, 550 U.S. at 555.

To the extent that Plaintiff seeks to bring a hostile work environment claim, such a claim also fails.  Discriminatory conduct that is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender,

religion, or national origin offends Title VII's broad rule of workplace equality."

Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 371 (1993).  To the

extent that Plaintiff's hostile work environment claim stems from the same

allegations underlying Plaintiff's employment discrimination claims, as noted

above, the Complaint does not contain enough factual content to suggest that race

or gender played a part in any employment action.

Moreover, Plaintiff alleged only two instances of "racially offensive"

statements made by Principal Bockman: her August 1, 2014 statement, "I own you

people!" which was made to the faculty and staff – presumably a group consisting

of people of various races – and her question to Plaintiff on September 22, 2014

regarding whether he saw himself as too "urban" to be at the school.  To sustain a

hostile work environment claim, the plaintiff must prove that "the workplace is

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment."  Harris, 510 U.S. at 21 (internal citations and

quotations omitted); Oncale v. Sundownder Offshore Servs., 523 U.S. 75 81, 118

S.Ct. 998 1003 (1998) (Title VII "forbids only behavior so objectively offensive as

to alter the 'conditions' of the victim's employment.").  There are no factual

allegations to support an inference that the two incidents identified in the

11

Complaint amount to the type of severe or pervasive conduct necessary to support a hostile work environment claim. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).[4]  Accordingly, Plaintiff fails to state a plausible claim for hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998) (stating that isolated incidents that are not extremely serious are not sufficiently severe or pervasive to create an objectively hostile work environment).

2.    Title VII Retaliation

Turning to Plaintiff's retaliation claim, Title VII makes it unlawful for an employer to discriminate against an employee because the employee opposed an unlawful employment practice under Title VII.  42 U.S.C. § 2000e–3(a); EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000).  Retaliation under Title VII occurs when an employee engages in protected activity, and suffers an adverse employment action that is causally related to that activity.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998).  With regard to causation, a plaintiff must show that the decision-maker was aware of the protected

---

[4]    The "severe or pervasive" requirement contains both an objective and a subjective component.  Miller, 277 F.3d at 1276.  The offensive behavior "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive."  Id. (internal quotation marks omitted).

12

conduct.  Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002).

It is not clear from which protected activity Plaintiff's claim may stem. Construing the Complaint broadly, there are several instances where Plaintiff may have engaged in protected activity.  First, Plaintiff alleges that complaints were made to the APS ethics hotline in response to Principal Bockman's August 1, 2014 statement to the faculty and staff.  Assuming that Plaintiff complained to the APS ethics hotline about the statement and unlawful employment practices (such that it was protected conduct), the factual allegations in the Complaint fail to connect such a complaint with any adverse employment action. [5]

Second, regarding the complaints made by Plaintiff, Mr. Marquez, and Coach Avery to Associate Superintendent Greg Middleton in October 2014, assuming their concerns rose to the level of protected conduct, there are no facts to suggest that Associate Superintendent Middleton had any input in the decision that

---

[5] Moreover, there are no facts alleged to support an inference that the false "write-ups" Plaintiff received on September 22, 2014 or October 30, 2014 might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Put another way, that either act would be considered an adverse employment action.  See Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008).  Based on the allegations in the Complaint, neither write-up (nor any of the other treatment Plaintiff complains of) dissuaded Plaintiff from filing two charges of discrimination with the EEOC.

resulted in the February 10, 2015 letter to Plaintiff stating that his contract with APS may not be renewed, or the Office of the APS Superintendent's decision not to renew Plaintiff's contract seven months later.   There are also no factual allegations regarding causation, a retaliatory motive, or that Associate Superintendent Middleton told anyone about Plaintiff's concerns.   To the extent that Plaintiff relies solely on temporal proximity to support an inference of causation, the complaint fails as a matter of law because here, the proximity between Plaintiff's complaints to Associate Superintendent Middleton and the February 10, 2015 letter is four months and, thus, is not "very close."  See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that a three or four month period between the statutorily protected expression and the adverse employment action was insufficient to show causation); Perry v. Rogers, 627 F. App'x 823, 833 (11th Cir. 2015) (unpublished).   Thus, Plaintiff has fails to state a plausible retaliation claim based on his statements to Associate Superintendent Middleton.

Finally, with regard to Plaintiff's EEOC charges of discrimination, Plaintiff filed his first charge of discrimination on February 17, 2015, after he was placed on the PDP and after Principal Bockman told Plaintiff that he would not receive a teaching contract for the next school year.   Although the written notification

14

regarding nonrenewal was received by Plaintiff in May 8, 2015, at that time, the PDP was already in place, Plaintiff had received a letter stating that his contract may not be renewed, and Principal Bockman had already verbally informed him that his contact would not be renewed. The facts alleged in the Complaint do not support a reasonable inference of causation or any connection between the first charge of discrimination (much less the second charge of discrimination filed on June 17, 2015) and the PDP or the nonrenewal of Plaintiff's contract with APS. Thus, Plaintiff fails to state a retaliation claim.

## III.   CONCLUSION

For the reasons discussed, I **RECOMMEND** that Defendant APS's Motion to Dismiss (Doc. 28) be **GRANTED**, in its entirety.

**SO REPORTED AND RECOMMENDED**, this 20th day of September, 2016.

Catherine M. Salinas
United States Magistrate Judge

15